By the Court, Cowen, J.
The first question is,whether there was a vacancy, within the meaning of the militia law. If not, it is agreed that the court martial had no jurisdiction. The statute relied on as authority for filling the vacancy is 1 R. iS. Is# ed., p. 309, §17, (p. 303, 2d ed.) This provides that, u In case any vacancy shall happen in the court, or a new court shall be required, the officer ordering the court or his successor in command may fill such vacancy or order a new court.” The court below charged that, from the proofs in the case, there was not such a vacancy as would authorize the appointment of Potter. And looking at the declarations of Lovejoy as merely ex parte, however reasonable his ground was for a present excuse from remaining and serving, it was of a mere temporary character, in no sense amounting to an absolute disqualification. Independently of the co-operation of the appointing power, I take it to be entirely clear, that nothing short of some permanent disqualification—such as removal with a view to a change of domicil, or, perhaps, lasting physical disability, for instance, paralysis or insanity—can be allowed as of itself creating a vacancy. Suppose Capt. Lovejoy had removed beyond the district to which his office related, for the purpose of temporary occupation, and that even for many months. *246 If he had done so with an intention to return and continue his former domicil, the case would have been stronger than that which occurred; and yet it would not in itself have avoided his place as a member of the court martial. (Lyon v. The Commonwealth, 3 Bibb, 430 ; Vide Rex v. Exeter, Comb. 197.) There was no refusal to accept the appointment; for he had, with the other members of the board, sworn into office, and all three had convened for the purpose of entering on business. After once accepting an office, refusal to serve is a cause of forfeiture, if without good reason; but however general and absolute, it is not a forfeiture per se. The dangerous illness of Capt. Lovejoy’s child, or his own indisposition, was good cause of adjournment; but it did not create a vacancy.
The common pleas were equally correct in supposing that the colonel could not, of his own head, dismiss or excuse Capt. •Lovejoy, and thus create a vacancy. He could not remove him without his consent, whether on the ground that he had a good present excuse for refusing to serve or not.
There is, however, an ulterior view of the question which does not seem to have been presented below, and which appears to me decisive in favor of the defendant. The colonel is the appointing power of a regimental court martial; (1 R. S. 303, 2d ed. § 15 ;) and, as such, had detailed these members and fixed the time of their meeting ; and he (or rather his successor, which is the same thing,) happened to be present at the time when the court organized. Capt. Lovejoy, after swearing in, declaring there was good cause for not remaining, offered to vacate his place; the colonel accepted the offer and detailed another to act in his stead. We have here the concurrence both of the officer appointed and the appointing power, that the former should vacate and another be substituted, and both are done in form. There is no doubt of the intent; and I am of opinion that, by this joint act, a vacancy was effectually created- and supplied within the meaning of the statute. This statute is a legislative delegation of the power to appoint commissioners from among the officers of the regiment. It is a very usual case in our legal system; though most common— *247 and therefore affording more full illustration as to the means of vacating, and filling vacancies—in our judiciary and in corporations. But all cases of the kind are equally delegations of political power. One familiar method of vacation is by resignation ; and I believe it has never been doubted that, independently of any statutory or constitutional provision, resignations may be effected by the concurrence of the incumbent and the appointing power. In cases of municipal corporations, where the mode of appointment is by election from- a certain class, this mode of vacation by resignation and acceptance has often been judicially recognized and allowed as valid. A learned writer observes upon the cases on this subject, “ I presume that a right to accept a resignation passes incidentally with a right to elect.” (Willc. on Man. Corp. 240.) Indeed, this seems to have generally been taken for granted by the cases, the main questions having been on the mode of resignation. On these, however, the cases are entirely clear, that the resignation may be either in writing or by parol, express, or even by implication, so that there be an intent to resign on one side, and an acceptance on the other. In Le Roy v. Tidderley, (1 Sid. 14,) Hale, Ch. Baron, said, that every corporation, as such, had power to accept a resignation. This was agreed by the whole court in Jenning’s case, (12 Mod. 402.) In Taylor’s case, (Poph. 133, 4,) it came out that one Hazard had agreed with the city of Gloucester to resign his place of aider-man, in consideration of ¿£10 a year for life. His wife being discontented, he would have been off. Coventree, his solicitor, said he could not surrender; and cited Middlecot’s case, an alderman of B., where the opinion of the court was (13 Eliz.) that he could not. Doderidge answered: “ Perhaps they would not accept his surrender.” Montague said, “ that Alderman Martin of London gave up his alderman’s place; and, without question, any man in such a case may surrender or leave his place, to which the court agreed •’’ and held him to his bargain. Hazard’s case is reported to the same effect in 2 Roll. Rep. 11. There the justices appear to have-united in *248 answering Coventree that the failure of the alderman of B. to effect his resignation, was the refusal of his superiors to assent. The incidental power of a municipal corporation is therefore beyond question. (Willc. on Mun. Corp. 240.). The case is analogous to the present. The 1 R. S, 111, 112, 2d ed. § 36, goes upon the principle of these authorities, and I think comprehends the case before us. After designating various bodies, boards or officers to whom resignations may be addressed by certain officers, it adds, (subd. 8,) “ By all other officers to the body, board or officer that appointed them.” The next section mentions resignation as one mode of creating a vacancy.
Where no particular- mode of resignation is prescribed by law, and -where the appointment is not by deed, it may be by parol; as by the incumbent declaring to the appointing power that he resigns his office, or will continue to serve no longer, and requesting an acceptance of his resignation. Nor need the acceptance be in writing. It is enough that the office be treated as vacant; for instance by appointing a successor. The leading case of Rex v. Rippon, (1 Ld. Raym. 563 ; 2 Salk. 433, S. C.,) resolves both these points. The same thing, touching the form of the resignation, was agreed in Regina v. Lane, as it appears by three reporters. (1 Ld. Raym. 1304 ; Fast. 275, and 11 Mod. 270. See Jennings’ case, 12 Mod. 402, S. P. ; Regina v. Gloucester, Holt’s Ref. 450, S. P.) Indeed, as I before remarked, a vacancy may sometimes arise from a mere implied resignation, as by accepting an office incompatible with that which is claimed to be vacant. (The People, ex rel. Whiting, v. Carrique, 2 Hill’s Ref. 97, and the books there cited.)
I am not aware of any statute forbidding resignations in the common law form ; and there being none, as I believe, I can entertain no doubt that the place of Captain Lovejoy was le ■ gaily vacated ; and room thus made for the appointment of a successor according to the statute. He refused to serve, and *249 in effect offered to surrender his place to the appointing power, by which the offer was accepted and a successor,appointed.
I do not, therefore, stop to discuss the question whether the act of Colonel Wagoner was judicial in its character, and so conclusive against all question collaterally. Wood v. Peake, (8 John. R. 69,) a case of appointment by justices, of a constable, looks strongly that way; and if correct in principle that the act of appointment involved a judicial determination on the question of vacancy, it is conclusive. I confess the exercise of a power to appoint in a given case always has appeared to me rather an act of ministerial or executive, than judicial power. The boundary is somewhat confused by the adjudications, however, and I am sure it cannot now be necessary to examine the question.
The court below, I think, erred in holding that notice by the court martial to the delinquent, of the fine imposed, was essential to the right of issuing a warrant for collection 3 although he had hot personal notice to appear. The only consequence of the original notice not being personal is, that after being apprised of the fine, the delinquent has ten days in which to appeal from the decision of the officer instituting the court. The provisions touching the question are contained in 1 R. S. 304 and 309, 2d ed. Even if it be the duty of the court to give notice, which is certainly the better course, yet the statute in this is merely directory. It does not make the notice a condition on which the warrant is to go 3 indeed it is not pretended that there is any positive direction to the court on the subject. There being a want of personal notice originally, the time for appeal is very properly extended ; but it is not essential to this right that it should be exercised before execution. In most other-cases, the appeal may as well be taken afterwards as before. If the execution be levied, that of itself is notice, and a successful appeal will subvert the levy as well as the previous proceedings. Admitting it therefore to have been the duty of the court to give notice, they have neglected their duty and may be liable to an action, if any mischief arose from the neglect. *250 Butnotice not being put forward as an essential preréquisite tó execution, it may be omitted without vitiating the proceedings.
On the whole, I am of opinion that the judgment of the court below should be reversed.
Ordered accordingly.